UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| METROPOLITAN CREDITORS' TRUST, SUMMIT CREDITORS' TRUST, METROPOLITAN MORTGAGE & SECURITIES CO., INC. AND SUMMIT SECURITIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br><br>Defendant. | No. CV-05-0290-FVS<br><br>ORDER DENYING MOTION TO DISMISS |

**THIS MATTER** came before the Court on the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Ct. Rec. 62) and THE Defendant's Request for Judicial Notice (Ct. Rec. 21). The Plaintiffs were represented by Parker C. Folse, III and Matthew R. Berry. The Defendant was represented by Kenneth P. Herzinger, Robert P. Varian, and Frank J. Gebhardt.

**BACKGROUND**

Plaintiffs Metropolitan Mortgage & Securities Company, Inc. ("Metropolitan") and Summit Securities, Inc. ("Summit") are affiliated securities companies. Both own a number of subsidiaries, collectively referred to as the "Met Group." Pricewaterhousecoopers, LLP ("PwC") audited the Met Group's financial statements from 1994-2001. The engagement letters governing the Defendant's work for the Plaintiffs

ORDER DENYING MOTION TO DISMISS 1

for fiscal years 1999 and 2000 contain the following clause: "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against Pricewaterhousecoopers LLP arising out of this engagement to anyone."  (Ct. Rec. 66 Exhibit I at 4; Ct. Rec. 66 Exhibit J at 4.)

Beginning in 1997, the Defendant began marketing the Foreign Leverage Investment Program ("FLIP") to Metropolitan.  First Am. Compl. ¶¶ 21-23.  The FLIP is an offshore investment scheme.  First Am. Compl. ¶ 17.  On March 31, 1999, the Defendant issued an opinion letter advising Metropolitan that the FLIP was "more likely than not" to survive a challenge by the Internal Revenue Service ("IRS").  First Am. Compl. ¶ 27.  However, the FLIP had a number of legal flaws, and the Defendant was allegedly aware of these at the time it marketed the FLIP to Metropolitan.  First Am. Compl. ¶ 20.  Based on this letter, Metropolitan invested in the FLIP.  In 2001, the IRS determined that the FLIP was an abusive tax shelter.  First Am. Compl. ¶ 20. Metropolitan voluntarily disclosed its investment in the FLIP and subsequently entered into a settlement with the IRS whereby the IRS permitted Metropolitan to retain approximately 20% of the promised tax savings from the FLIP.  First Am. Compl. ¶ 40.

On February 4, 2004, Metropolitan and Summit filed for Chapter 11 Bankruptcy.  First Am. Compl. ¶ 12.  The Third Amended Joint Reorganization Plan ("Joint Reorganization Plan") formed the Metropolitan Creditor's Trust and the Summit Creditor's Trust (collectively "the Trusts").  The function of the Trusts is to administer post-confirmation responsibilities under the Plan of

ORDER DENYING MOTION TO DISMISS 2

Reorganization for the benefit of Metropolitan and Summit's creditors. First Am. Compl. ¶¶ 7-8. Pursuant to the Joint Reorganization Plan, all of Metropolitan and Summit's legal claims against PwC have "vested" in the Trusts. First Am. Compl ¶¶ 7-8.

In 2005, the Plaintiffs filed suit against PwC for professional negligence. The Plaintiffs claim that the Defendant was negligent in its 1999 and 2000 audits in that it failed to detect violations of applicable accounting principles, did not identify systematic weaknesses in the Met Group's financial controls, and ignored problematic reporting patterns. Complaint ¶ 3. These oversights, Plaintiffs allege, concealed the problems in the Met Group's accounting practices and business operations from the individuals who were in a position to remedy them, ultimately resulting in the Chapter 11 filing.

On June 21, 2006, the Plaintiffs filed their First Amended Complaint ("FAC"). (Ct. Rec. 61.) The FAC adds Metropolitan Creditor's Trust and Summit Creditor's Trust to the action as Plaintiffs. First Am. Compl. The FAC also brings a new claim against the Defendant. Specifically, Count II of the FAC alleges that the Defendant was negligent in rendering its tax opinion letter concerning the FLIP. First Am. Compl. ¶¶ 93-97.

The Defendant has filed a Motion to Dismiss the FAC on three separate grounds (Ct. Rec. 67). First, the Defendant argues that the nonassignment clauses in the engagement letters between the Defendant, Metropolitan, and Summit prohibit Metropolitan and Summit from assigning their claims against PwC to the Trusts. The Trusts

ORDER DENYING MOTION TO DISMISS 3

therefore may not participate in the case.  Second, the Defendant urges the Court to dismiss Counts I, III, and IV of the FAC "to the extent that they seek losses allegedly sustained by [Metropolitan and Summit's] creditors."  Finally, the Defendant argues that the Plaintiffs have failed to allege that they suffered any legal damages as a result of their investment in the FLIP.

In support of the motion to dismiss, the Defendant has asked the Court to take judicial notice of the following thirteen documents:

1. Metropolitan's 10-K Form filed January 16, 2001.

2. Summit's 10-K Form filed January 16, 2001.

3. Metropolitan's 8-K Form filed June 18, 2001.

4. Summit's 8-K Form filed June 18, 2001.

5. The Third Amended Disclosure Statement with Respect to the Third Amended Joint Reorganization Plan filed in the United States Bankruptcy Court for the Eastern District of Washington.

6. The Complaint filed by the Securities and Exchange Commission against Paul Sandifur in the United States District Court for the Western District of Washington.

7. The Third Amended Joint Reorganization Plan approved by the United States Bankruptcy Court for the Eastern District of Washington;

8. Metropolitan's Motion for Entry of An Order Approving a Compromise and Settlement between Metropolitan and the IRS filed in the United States Bankruptcy Court for the Eastern District of Washington;

9.  The engagement letters between PwC and Metropolitan for

ORDER DENYING MOTION TO DISMISS 4

fiscal years 1999 and 2000;

10. The engagement letters between PwC and Summit for fiscal years 1999 and 2000;

11. The Class Action Complaint filed in Case Number CV-04-0025-FVS;

12. The tax opinion letter from PwC to Metropolitan discussing the Foreign Leverage Investment Program ("FLIP") program; and

13. Metropolitan's Form 10-Q filed June 30, 2001.

(Ct. Rec. 66.)

**DISCUSSION**

**I.   SUBJECT MATTER JURISDICTION**

This Court has discretion to exercise jurisdiction over the claims alleged in the FAC pursuant to 28 U.S.C. § 1334.  Section 1334 provides that the federal district courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §§ 1334(b)-©).  The Plaintiffs allege that their state law claims are related to the Chapter 11 Bankruptcy proceedings pending in the United States Bankruptcy Court for the Eastern District of Washington.  First Am. Compl. ¶ 5.

**II.  REQUEST FOR JUDICIAL NOTICE**

**A.   Legal Standard**

Under Federal Rule of Evidence 201, a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information."  Fed. R. Ev. 201(d).  A fact is

ORDER DENYING MOTION TO DISMISS 5

appropriate for judicial notice if it is

> not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Ev. 201(b). Facts contained in public records are considered appropriate subjects of judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006).

The consequences of taking judicial notice are significant. Where the trial court has taken judicial notice of a fact, the jury must be instructed to accept that fact as conclusive. Fed. R. Ev. 201(g). Judicial notice also precludes either party from introducing evidence to disprove that fact. *Rivera v. Philip Morris, Inc.*, 393 F.3d 1142, 1151 (9th Cir. 2005). The Ninth Circuit has accordingly urged the district courts to be cautious in taking judicial notice and to do so only when the "matter is beyond controversy." *Id.*

**B.   Scope of Judicial Notice**

The Defendant has asked the Court to take judicial notice of a series of documents, rather than particular facts shown to be beyond reasonable dispute by those documents. (Ct. Rec. 66 at 1.) While the Plaintiffs do not object to the Court's consideration of 11 of the 13 documents for the limited purpose of ruling on the Defendant's Motion to Dismiss, the Plaintiffs do object to the scope of the judicial notice requested by the Defendant. (Ct. Rec. 72 at 4.) The Court agrees. The documents the Defendant has submitted for judicial notice are voluminous. Taking judicial notice of the documents in their entirety could have unforeseen consequences later in the litigation.

Both parties agree that the Court should take judicial notice of the particular statements in these documents that the Defendant relies upon in its Motion to Dismiss. In view of the Ninth Circuit's cautious approach to judicial notice, this seems the appropriate course of action. The Court will accordingly take judicial notice only of those facts appearing in the submitted documents that are both undisputed and relevant to the issues presented in the motion to dismiss. The Court will take judicial notice of these facts for the purpose of deciding the Defendants' Motion to Dismiss only.

### C. Judicial Notice of Filings in Other Courts

Rule 201 does not permit a trial court to take judicial notice of any facts found by a court in another judicial proceeding. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)(*citing M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)). However, a court may take judicial notice of the existence of another court's opinion. *Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 334 F.3d 920, 931 (9th Cir. 2003); *Lee,* 250 F.3d at 690.

Based on the Ninth Circuit's opinions in *Wyatt* and *M/V Am. Queen*, the Plaintiffs argue that the Court should not take judicial notice of either the criminal complaint the SEC filed against Paul Sandifur (Document 6) or the Class Action Complaint filed in this Court (Document 11). (Ct. Rec. 72 at 7.) The Court is not persuaded by this argument. *Wyatt* and *M/V Am. Queen* are distinguishable from the present case because the Defendants are not asking the Court to take notice of any findings of fact. Rather, the Defendants ask the Court to recognize the existence of these two related proceedings. (Ct.

ORDER DENYING MOTION TO DISMISS 7

Rec. 77 at 3.)

Under *Wyatt* and *M/V Am. Queen*, the Court may take notice of the fact that the SEC has filed a criminal complaint against Sandifur in the Western District of Washington. It may also take judicial notice of the fact that a class action is pending against Metropolitan in this Court. The Court may not, however, accept any of the allegations of these complaints as true.

**III. MOTION TO DISMISS**

    **A.   Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02(1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). This determination must be based upon the facts set forth in the plaintiff's complaint. Fed.R.Civ.P. 12(b). In construing the complaint, the Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998). When a court has taken judicial notice of facts, the court may also consider the facts noticed in evaluating a motion to dismiss. Fed. R. Ev. 201.

    **B.   Nonassignment Clause**

The Defendant argues that the Joint Reorganization Plan assigned and transferred Metropolitan and Summit's claims against PwC to their respective trusts in violation of the nonassignment clauses in the two engagement letters. (Ct. Rec. 67 at 8.) The Defendant emphasizes the

ORDER DENYING MOTION TO DISMISS 8

fact that both the FAC and Joint Reorganization plan describe the "vesting" of Metropolitan and Summit's claims in their respective trusts. The Defendant also suggests that the cases cited by the Plaintiffs, *In re Sweetwater* and *Professional Inv. Properties of America,* are inapplicable because they dealt with the viability of a common law doctrine following the enactment of Section 1123 of the Bankruptcy Code.

The Court is persuaded, based on the language of the trust agreement, the application of relevant precedent, and the policy underlying the Bankruptcy Code, that no assignment has occurred. Rather, Metropolitan and Summit have retained their claims against PwC and the trusts have been appointed to pursue these claims on behalf of Metropolitan and Summit's creditors.

In a bankruptcy action, the debtor may retain its rights to a legal claim after the bankruptcy court has appointed a representative to enforce or pursue the claim. United States Bankruptcy Code provides that a reorganization plan "may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such a purpose, of any" claim or interest of the debtor. 11 U.S.C. § 1123(b)(3)(B). The appointment of a third party to enforce a debtor's legal claims thus does not necessarily effect an assignment of the claims. *In re Sweetwater*, 884 F.2d 1323, 1327 (10th Cir. 1989); *In re Professional Inv. Properties of America*, 955 F.2d 623, 626 (9th Cir. 1992). Rather, courts should follow a case-by-case approach in determining whether an appointed party is serving as an assignee or as a representative of the estate.

ORDER DENYING MOTION TO DISMISS 9

*Sweetwater*, 884 F.2d at 1327. In making this determination, the crucial inquiry is whether recovery by the appointed party would benefit the debtor's estate and its unsecured creditors. *Id.*

The language of the trust agreement indicates that no assignment has occurred in this case. The trust agreement explicitly states that each trust shall "retain and preserve all of Metropolitan's [and Summit's] Causes of Action [. . .] as **representatives** and successors to Metropolitan [and Summit] and **in accordance with Bankruptcy Code section 1123(b)(3)(B),**" the section of the Bankruptcy Code that permits retention by debtors. (Ct. Rec. 66, Exhibit G, Article IV(A)(8)(emphasis added)). The language cited by the Defendant does not demonstrate that an assignment occurred. As the Defendant its self points out, the trust agreement in *Sweetwater* explicitly transferred "title" to the trust and stated that the debtor's assets "vested" in the trust. In the presence of this language, the Tenth Circuit held that an assignment had not occurred. Under *Sweetwater*, the fact that the trust agreement in this case "vests" Metropolitan and Summit's assets in their Trusts is insignificant, as is the fact that the trust agreement purports to transfer "all right, title and interest" to the trusts.

The relevant case law also indicates that no assignment has occurred. While the Defendant is correct that *Sweetwater* and *Professional Inv. Properties of America* overruled the common law treatment of a trustee's avoidance powers, they did so by holding that the appointment of a representative under Section 1123 does not effect an assignment. *Sweetwater*, 884 F.2d at 1327; *Professional Inv.*

ORDER DENYING MOTION TO DISMISS 10

*Properties*, 955 F.2d at 626.  Thus, if the bankruptcy court appointed the Trusts as representatives of Metropolitan and Summit's estates, the debtors legal claims were not "assigned."

Applying the test articulated in *Sweetwater*, the Trusts qualify as representatives of Metropolitan and Summit's estates.  *Sweetwater* and *Professional Inv. Properties* focused on two factors: whether the appointment in question was approved by the bankruptcy court and whether the appointed party's actions would benefit the debtors and the debtors' creditors.  In the present case, the bankruptcy court has approved the Joint Reorganization Plan, which incorporates the Trust Agreement.  More importantly, as the Plaintiffs argue, the aim of establishing the Trusts was to liquidate Metropolitan and Summit's assets for the benefit of their creditors.

Finally, as the Plaintiffs observe, it would be contrary to the purpose of both the Joint Reorganization Plan and federal bankruptcy law to hold that a debtor's legal claims "evaporated upon the confirmation of a liquidating bankruptcy plan."  (Ct. Rec. 71-1 at 10.)  The Defendant implies that debtors in a bankruptcy proceeding may only retain their causes of action when particular "magic words" appear in the reorganization plan.  The Court refuses to adopt this view.  The reference to Section 1123 in the trust agreement at issue manifests a clear intent to appoint the Trusts as representatives, rather than assignees, of the debtors' claims.  To disregard this intent would be to ignore the purpose of Chapter 11 reorganization plans: to maximize distributions to the debtor's creditors.

**C.   Claims Asserted on Behalf of Creditors**

ORDER DENYING MOTION TO DISMISS 11

The Defendant argues that the Plaintiffs lack standing to bring the present suit because they are asserting claims that properly belong to their creditors, specifically the individuals who invested in Metropolitan and Summit's securities. (Ct. Rec. 67 at 11-12.) The Court disagrees and finds that the Plaintiffs have standing because they are seeking to address Metropolitan and Summit's injuries.

A bankruptcy trustee "stands in the shoes" of the debtor and has standing to bring any suit that the debtor could have brought. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir 1991). In contrast, a bankruptcy trustee lacks standing to assert claims on behalf of the debtor's creditors, even if the creditors have expressly assigned their claims to the trustee. *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434, 92 S. Ct. 1678, 1688 (1972); *Williams v. Cal. 1st Bank*, 859 F.2d 664, 667 (9th Cir. 1988). In determining whether the trustee has standing to bring a particular claim, courts should focus on "whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005).

The Ninth Circuit has held that a bankruptcy debtor has standing to bring claims against its former auditor in a case with facts similar to those of the present case. In *Smith v. Arthur Anderson*, the bankruptcy trustee for Boston Chicken brought a professional malpractice suit against the debtor's former auditors, alleging that their negligence enabled certain officials to misrepresent the company's financial status to its outside officers and directors. *Id.*

ORDER DENYING MOTION TO DISMISS 12

at 995. As a result, Boston Chicken's assets were "squandered on an unviable business plan, [encumbering] the firm with additional debt obligations that it had no realistic chance of repaying." *Id.* The Ninth Circuit held that misuse of a company's assets "qualifies as an injury to the firm which is sufficient to confer standing upon the trustee." 421 F.3d at 1003.

Similarly, the Plaintiffs in the case under consideration allege that the Defendant's negligence resulted in the continuation of unviable business practices and the accumulation of unserviceable debt. If the Defendant had performed its audits in conformity with Generally Accepted Accounting Standards ("GAAS"), the Defendant would have been prompted to "report the many detrimental conditions, financial misstatements, and unsound practices it should have discovered to independent members of Met's and Summit's boards and audit committees." First Am. Compl. ¶ 86. Compliance with GAAS accounting standards would also have discouraged investors from purchasing securities from Metropolitan and Summit, thereby preventing Metropolitan and Summit from continuing to raise unserviceable debt. First Am. Compl. ¶ 85.

The Defendant correctly observes that the Ninth Circuit limited the *Smith* holding. Under *Smith*, not every "incurrence of additional debt that cannot be repaid, in and of itself, constitutes a corporate injury remediable by a trustee." 421 F.3d at 1004. The *Smith* holding rested on the fact that the auditors "dissipated assets" by prolonging the corporation's existence past the point of viability. *Id.* However, giving the Plaintiffs the full benefit of the facts they have

ORDER DENYING MOTION TO DISMISS 13

plead, it is possible that they could prove the Defendant's audit opinions had the same effect in this case. This is sufficient to survive a motion to dismiss. *Tyler*, 136 F.3d 207.

The Defendants have also argued that, even if the Plaintiffs do have standing to bring their claims, the Court should nevertheless issue an order dismissing the Plaintiffs' claims "to the extent that they seek to recover losses suffered by creditors." (Ct. Rec. 75 at 4.) As the Plaintiffs have observed, the Court could spend its time dismissing any number of arguments that the Plaintiffs have not raised. This practice would do little to advance the present litigation, however. The Court therefore declines to issue what would amount to an advisory opinion.

### D.   Count II: The Foreign Leverage Investment Program

The Defendant argues that the Court should dismiss Count II of the FAC because the Plaintiffs have suffered no damages as a result of this investment in the FLIP and thus cannot state a cause of action for negligence. (Ct. Rec. 67 at 16-17.) The Defendant alleges that Metropolitan has admitted that the FLIP earned a total net profit of $2.6 million. (Ct. Rec. 75 at 11.) This argument is based on a statement filed in the bankruptcy proceeding seeking approval of a settlement with the Internal Revenue Service.

The Court declines to take judicial notice of the truthfulness of the statement relied upon by the Defendant. As the Court has explained, judicial notice is only appropriate where the fact noticed is undisputed and readily verifiable. The profitability of the FLIP is a question of material fact disputed by the parties. Taking

ORDER DENYING MOTION TO DISMISS 14

judicial notice of the statement cited by the Defendant would therefore be inconsistent with Federal Rule of Evidence 201. Accordingly,

**IT IS HEREBY ORDERED:**

1. The Defendant's Request for Judicial Notice, **Ct. Rec. 66**, is **GRANTED IN PART AND DENIED IN PART.**

2. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the nonassignment clause contained in the engagement letters between PwC and Metropolitan for fiscal years 1999 and 2000 (Ct. Rec. 66 Exhibit I at 4). The Court notices that this clause provides:

> "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers, LLP arising out of this engagement to anyone."

3. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the nonassignment clause contained in the engagement letters between PwC and Summit for fiscal years 1999 and 2000 (Ct. Rec. 66 Exhibit J at 4). The Court notices that this clause provides:

> "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers LLP arising out of this engagement to anyone."

4. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended

ORDER DENYING MOTION TO DISMISS 15

Complaint (Ct. Rec. 62) only, of the fact that the United States Bankruptcy Court for the Eastern District of Washington has confirmed the Third Amended Joint Reorganization Plan of Metropolitan Mortgage & Securities Co., Incl. and Summit Securities, Inc.

5. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization Plan refers to Metropolitan and Summit's assets as the "Metropolitan Transferred Assets" and the "Summit Transferred Assets" on pages 24 and 32. (Ct. Rec. 66 Attachment G at 24, 32.)

6. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization plan states:

> Metropolitan's causes of action shall vest in the Metropolitan Creditor's Trust upon the Effective Date, the Metropolitan Creditors' Trust shall retain and preserve all of Metropolitan's Causes of Action and the Plan Administrator and the Executive Board shall pursue and enforce all of Metropolitan's Causes of Action, including, but not limited to, Avoidance Actions and Special Causes of Action, as representatives and successors to Metropolitan and in accordance with Bankruptcy Code section 1123(b)(3)(B).

(Ct. Rec. 66 Attachment G at 29, Lines 10-13.)

7. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization plan states:

> Summits's causes of action shall vest in the Summit Creditor's Trust upon the Effective Date, the Summit Creditors' Trust shall retain and preserve all of Summit's

ORDER DENYING MOTION TO DISMISS 16

> Causes of Action and the Plan Administrator and the Executive Board shall pursue and enforce all of Summit's Causes of Action, including, but not limited to, Avoidance Actions and Special Causes of Action, as representatives and successors to Summit and in accordance with Bankruptcy Code section 1123(b)(3)(B).

(Ct. Rec. 66 Attachment G at 29, Lines 10-13.)

    8. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the Third Amended Disclosure Statement with Respect to the Third Amended Joint Reorganization Plan filed in the United States Bankruptcy Court for the Eastern District of Washington. The Court notices that the Third Amended Disclosure Statement provides that "the main focus of the Plan is to maximize the percentage recovery of Debt Security holders and other unsecured creditors from the limited pool of remaining assets." (Ct. Rec. 66 Exhibit E at S-7 to S-8.)

    9. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the Creditors' Trust Agreement.

    10. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the paragraph entitled "Character and Treatment of Metropolitan Creditors' Trust for Tax Purposes" in the Trust Agreement contains the following statement: "all assets vesting in the Metropolitan Creditor's Trust will be treated for federal income tax purposes as having been transferred on the Effective date to the Metropolitan Beneficiaries and immediately

ORDER DENYING MOTION TO DISMISS 17

contributed to the Metropolitan Creditor's Trust by such Metropolitan Beneficiaries." (Ct. Rec. 66 Exhibit G Attachment A ¶ 2.3).

11. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the paragraph entitled "Character and Treatment of Summit Creditors' Trust for Tax Purposes" in the Trust Agreement contains the following statement: "all assets vesting in the Summit Creditor's Trust will be treated for federal income tax purposes as having been transferred on the Effective date to the Summit Beneficiaries and immediately contributed to the Summit Creditor's Trust by such Summit Beneficiaries." (Ct. Rec. 66 Exhibit G Attachment A ¶ 3.3).

12. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that one paragraph entitled "Declaration of Trust" in the Trust Agreement states,

> Metropolitan has executed this trust agreement and all right, title, and interest of Metropolitan in and to the Metropolitan Transferred Assets hereby vests in the Plan Administrator, to have and to hold unto the Plan Administrator forever, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the Plan for the benefit of the Metropolitan Beneficiaries.

(Ct. Rec. 66 Exhibit G Attachment A ¶ 2.1.)

13. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that a second paragraph entitled "Declaration of Trust" in the Trust Agreement states,

> Summit has executed this trust agreement and all right, title, and interest of Summit in and to the Summit

ORDER DENYING MOTION TO DISMISS 18

> Transferred Assets hereby vests in the Plan Administrator, to have and to hold unto the Plan Administrator forever, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the Plan for the benefit of the Summit Beneficiaries.

(Ct. Rec. 66 Exhibit G Attachment A ¶ 3.1.)

14. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, that the Securities and Exchange Commission has filed a case against Paul Sandifur in the Western District of Washington.

15. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, that a number of Metropolitan and Summit's creditors have filed a class action suit against Metropolitan and Summit in this Court.

16. The Defendant's Motion to Dismiss the Plaintiff's First Amended Complaint, **Ct. Rec. 62,** is **DENIED.**

17. Counsel should be advised that unsolicited correspondence with the Court is not in accordance with the Federal Rules of Civil Procedure. Such correspondence has been and will be ignored.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this <u>14th</u> day of November, 2006.

s/ Fred Van Sickle
Fred Van Sickle
United States District Judge

ORDER DENYING MOTION TO DISMISS 19